HELEN C. MURRAY *et al.*, Plaintiffs-Appellees, *v.* EUGENE RICHTER, d/b/a Bea's Lounge, Defendant-Appellant.

First District (4th Division) No. 60681

Opinion filed May 12, 1976.

560

JOHNSON, P. J., dissenting.

John C. Healy, of Stanton & Healy, of Chicago (Edwin A. Strugala, of counsel), for appellant.

Harry B. Aron, of Reese and Schaffner, of Chicago (Sidney Z. Karasik, of counsel), for appellees.

Mr. JUSTICE ADESKO delivered the opinion of the court:

A factual statement is necessary. Helen C. Murray, one of the plaintiffs was an unemployed widow, 39 years of age. About 9 p.m., on Saturday, March 28, 1970, she went to a tavern called the Cyprus where she stayed for an hour. Later, at 10 p.m. she went to defendant Richter's tavern called Bea's Lounge. Richter was not present. There were seven or eight people on the premises. She left there to get something to eat and returned about 10:30 p.m. Bea's Lounge had a big bar with 30 to 40 stools. She had a drink or two at the bar while she and the bartender watched a movie on television. About midnight the seven or eight people left. Three young men in their twenties came in about 1 a.m. Shortly thereafter two of their friends came. They were all motorcycle-type men. All of them drank several beers.

Helen Murray testified, "They were having a discussion and it kind of worried me. I had a sense about it." She asked the bartender, "Do you think you need any help?" He answered, "No, I'm not supposed to serve them but they have been here before. They're okay."

Two of the men came to where Helen Murray sat and took turns drinking beer from her glass. When she protested, one of them grabbed her by the hair and pulled her from the bar stool on to the floor. They tugged at her clothes and used a knife to cut and remove all of her clothes. She was nude and they poured beer all over her. She was then dragged to a shuffleboard. They placed her on top of it, poured more beer over her and one of them "tried to put his thing in her mouth and hit her with his fist * * *."

Charles W. Tomecek, the other plaintiff, drove to Bea's Lounge after midnight of March 28, 1970, opened the door and was told it was closed.

He came back and opened the door again. Someone inside said: "Well you asked for it. Come on in." Tomecek saw Mrs. Murray on the shuffleboard nude and one of the men was beating her with a motorcycle chain. Tomecek went to the bar and ordered a drink. The men wanted him to buy them a drink which he did. When he tried to get up to go to the phone, one of them took a gun out of his pocket, saying, "Try it and I'll shoot you dead." They then ordered Tomecek to take off his clothes and have intercourse with Mrs. Murray. He could not do it so they beat him with the motorcycle chain and told him to "start eating her" while they were pouring beer on her.

The motorcycle gang then fled after taking $85 from Tomecek and $17 from Mrs. Murray. They were arrested and Mrs. Murray recognized them in court.

On cross-examination, Mrs. Murray was shown her deposition wherein she was asked, "How many drinks did they have from the time they walked in, went to the back of the bar and walked up to you?" She answered, "I believe the first three, the bartender served them twice and then the other two, once or twice."

Plaintiffs brought this action under the Dramshop Act (Ill. Rev. Stat. 1971, ch. 43, par. 135) against Eugene Richter, d/b/a Bea's Lounge, to recover damages for personal injuries sustained as a result of the alleged intoxication of the assailants caused by drinks served at defendant's tavern. Verdicts were returned by a jury awarding Mrs. Murray $20,000, reduced to the statutory limit of $15,000 and $7,500 to Charles Tomecek.

The following issues are presented for review: (1) Did the trial judge err in permitting a police officer to testify as to his opinion as to the stability of the bartender, and did plaintiffs' counsel compound the above error by repetition of testimony solicited from witnesses regarding the bartender's alleged blameworthiness in serving the assailants in the first instance? (2) Did plaintiff Tomecek contribute to his own injury by ignoring signs of danger and injury to someone and himself and is he entitled to recover under the Dramshop Act?

The only issue under the Dramshop Act was whether defendant by his employee, Joe the bartender, served the assailants beer in such quantities as to cause their intoxication and whether their criminal misconduct occurred while they were so intoxicated or whether their victims' behavior occurred independently of any intoxication for which the defendant was legally responsible.

Section 14 of article VI of the Dramshop Act provides as follows:

> "Every person who is injured in person or property by any intoxicated person, has a right of action in his own name, severally or jointly, against any person who by selling or giving alcoholic

liquor, causes the intoxication of such person. Any person owning, renting, leasing or permitting the occupation of any building or premises with knowledge that alcoholic liquors are to be sold therein, or who having leased the same for other purposes, shall knowingly permit therein the sale of any alcoholic liquors that have caused the intoxication of any person, shall be liable, severally or jointly, with the person selling or giving the liquors." (Ill. Rev. Stat. 1971, ch. 43, par. 135. Subsequent references to the Act refer to the Dramshop Act.)

There is no evidence that defendant himself, or his bartender caused plaintiffs' injuries, or that they acted wilfully in initially serving plaintiffs' assailants beer. Counsel for plaintiffs was allowed to elicit from one of the police officers his opinion that the bartender, when the officer saw him that morning, was unstable and that the officer's opinion was based on prior unrelated events or incidents. Although defense counsel objected, the trial judge allowed the officer to testify. Thus, the officer improperly testified concerning the bad character of the bartender, as to prior incidents as well as to the day in question. The jury could infer that the defendant was negligent in his hiring of the bartender.

Once the assailants took charge and after they threatened to use a gun, further drinks were served under threat, fear and duress.

■■ Neither the bartender's behavior nor his intoxication was in issue under the pleadings. It was not the bartender's intoxication that was the basis for the cause of action under the Dramshop Act. Plaintiffs do not contest the general proposition that the negligence of a defendant is not at issue in a Dramshop action. Where liability is close so that a jury might have returned a verdict for either party, the trial must be conducted properly to avoid undue influencing the jury. *Both v. Nelson,* 31 Ill. 2d 511, 514, 202 N.E.2d 404.

■■ On the day here involved, plaintiff Tomecek got off from work at midnight, went to a grill for a hamburger, then to a lounge for a beer and then decided to drive to Bea's Lounge. As he opened the door, one of the motorcycle men said to him, "It's closed." Tomecek then walked to the tavern next door and finding it closed returned to Bea's Lounge. As he opened the door, one of the motorcycle men said: "Well, you asked for it. Come on in." He could have left the place but chose to proceed beyond the door. He saw Helen Murray nude on the shuffleboard and one of the motorcycle men beating her with a chain. It was obvious that Tomecek, exercising ordinary prudence, should have sensed danger. He chose to stay. It is our opinion that he has no cause of action against the defendant.

■■ We believe that the erroneous rulings of the trial court were sufficient to deprive defendant of a fair trial and we reverse and remand

the cause of plaintiff Helen C. Murray for a new trial. As to Charles W. Tomecek, we reverse the judgment entered in his favor.

Judgment reversed and remanded; judgment reversed.

BURMAN, J., concurs.

Mr. PRESIDING JUSTICE JOHNSON, dissenting:

I respectfully dissent from the opinion of the majority and would affirm the decision of the trial court.

To recover under the Dramshop Act, all that is required is a showing that the defendant dramshop keeper sold or gave alcoholic beverages which contributed to the intoxication, and that the injury was caused by such intoxication. (*Tresch v. Nielsen* (1965), 57 Ill. App. 2d 469, 472, 207 N.E.2d 109.) In this case, defendant, through his agent, the bartender, unquestionably served alcoholic beverages to the assailants. Whether they were or became intoxicated was a question for the jury. Generally, proof of intoxication in a dramshop action requires evidence which establishes that the tortfeasor was in fact intoxicated, and it is not sufficient that the evidence prove only that the alleged intoxicant consumed alcohol; but evidence that such person consumed alcohol, together with evidence of unusual behavior, or opinion evidence that he was drunk, would entitle a jury to conclude that the person was intoxicated. (*Weiner v. Trasatti* (1974), 19 Ill. App. 3d 240, 244, 311 N.E.2d 313.) Such a case was made out by the plaintiffs.

Plaintiff Murray testified that she watched television for a period of time after the men entered the lounge without being disturbed. It was only after the assailants had consumed several drinks that they began to harass her. Her testimony is very clear that she considered them to be drunk when they committed the assault. This, together with the testimony of both plaintiffs concerning the unusual and despicable behavior of the men involved, would warrant the conclusion that the offenders were intoxicated, that defendant's selling of alcoholic beverages contributed to the intoxication, and that the injuries to plaintiffs were caused by their intoxication.

Defendant contends that the trial court erred in admitting certain testimony concerning the bartender which resulted in irreparable prejudice and denied defendant a fair trial. The majority believes the police officer's testimony about the alleged bad character of the bartender implied negligence on the part of defendant in hiring him. I submit that at most this was harmless error because the Dramshop Act imposes liability without the necessity of proving fault. (*Tresch v. Nielsen* (1965), 57 Ill.

App. 2d 469, 472, 207 N.E.2d 109.) Therefore, even if defendant had exercised the highest degree of care in employing the bartender, his liability for the wrongs arising out of the intemperate use of alcohol would be unaffected.

The majority also concludes that once the assailants took charge, further drinks were served under duress. Defendant did not raise duress as an affirmative defense and should not be heard to do so on appeal. In any event, the jury reasonably could have determined from the evidence that the assailants were intoxicated before they took charge and that any subsequent duress was not the proximate cause of plaintiffs' injuries. This is consistent with the testimony of plaintiff Murray concerning the bartender's statement that he was not supposed to serve the men but that they had visited the lounge before and were "okay." The defense of duress is also inconsistent with plaintiff's testimony that the bartender refused to permit her to call the police after the men had fled.

The majority cites no support for the proposition that plaintiff Tomecek had no cause of action because he failed to exercise ordinary prudence in sensing the danger. It is well established that the doctrine of contributory negligence is not applicable to a dramshop case *(Overocker v. Retoff* (1968), 93 Ill. App. 2d 11, 21, 234 N.E.2d 820; *Lester v. Bugni* (1942), 316 Ill. App. 19, 28, 44 N.E.2d 68) and does not constitute a defense *(Quatrano v. Marrocco* (1965), 61 Ill. App. 2d 1, 14, 208 N.E.2d 632). Cases holding that a person who is "in pari delicto" with a tavern keeper and either causes or contributes to cause the intoxication of another cannot recover in a dramshop action are not applicable where the injured person does not contribute to the intoxication of another, drink with him or provoke an attack upon himself. *(Quatrano v. Marrocco* (1965), 61 Ill. App. 2d 1, 15, 208 N.E.2d 632.) I find no evidence that plaintiff Tomecek voluntarily contributed to the intoxication of the assailants, that he drank with them or that he provoked the subsequent attack by entering the lounge.

Plaintiffs proved the essential elements of their cause of action by a preponderance of the evidence. The jury accordingly found liability under the Dramshop Act. We should not, on appeal, substitute our opinion for the decision of the jury. I would affirm the judgment.